IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                          Criminal No. 3:24-cr-65-2

TREVOR DILLION RHODES,

        Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on the DEFENDANT'S OBJECTION TO THE SENTENCING GUIDELINES, ECF No. 45, ("the MOTION"), filed by Trevor Dillion Rhodes ("Rhodes" or "Defendant").

Rhodes was indicted for Possession of Firearms by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1) ("COUNT ONE") and Possession of a Machinegun in violation of 18 U.S.C. § 922(o) and 26 U.S.C. § 5845(b) ("COUNT TWO"). ECF No. 1, at 1-2. Rhodes pled guilty to the offense of Possession of Firearms by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1). ECF No. 33, at 1. He objects to the Probation Office's Presentence Investigation Report, ECF No. 68, ("PSR") because it recommends imposing a four-point enhancement to his Base Offense Level for possessing a firearm with "an altered or obliterated serial number" under U.S.S.G. § 2K2.1(b)(4)(B)(i). ECF No. 68, at 8. Rhodes argues that the enhancement should not apply to him because, although two-of-the-three serial numbers on a weapon in his possession were altered

1

or obliterated, a third remained unaltered and intact. ECF No. 45, at 3-4.

Whether the enhancement under U.S.S.G. § 2K2.1(b)(4)(B)(i) applies to a defendant when some, but not all, of a firearm's serial numbers have been altered or obliterated is a question of first impression in the Fourth Circuit. For the reasons set forth below, the MOTION, ECF No. 45, was denied.

## I. FACTS

On January 4, 2024, Rhodes and his co-defendant, Markel Trevon Smith ("Smith"), were apprehended at a Jiffy Mart in Chesterfield County, Virgina, after employees called the police to report a robbery. After detaining Rhodes and Smith, the police officers searched the vehicle that Rhodes and Smith had driven to the Jiffy Mart. The search yielded four firearms: (1) a Shooters Arms Manufacturing (S.A.M.), Inc., Military Model, .45 caliber pistol, bearing serial number ML137454; (2) a Glock, Model 45, 9mm caliber pistol, bearing serial number AGGE159 and with a Glock switch machinegun conversation device attached ("the Glock"); (3) a Glock, Model 30, .45 caliber pistol, bearing serial number PBL369; (4) a Ruger, Model GP100, .357 caliber revolver, bearing serial number 173-11992; and (5) various goods, cumulatively valued at less than $1,000, that had been stolen from the Jiffy Mart. ECF No. 34, at 1-2. The offense of conviction was for possession of

the Glock and the other firearms in violation of 18 U.S.C. § 922(g)(1).

Originally, that Glock had three visible serial numbers; however, at some point, two of those serial numbers were obliterated.[1] For one serial number, the only legible part is the number "9" at the end of the number. For a second serial number, the letter "A" is visible at the start of the number and the number "9" at the end. One serial number, reading AGGE159, however, remains unaltered and intact on the barrel of the Glock. ECF No. 52-1, at 1-3.

Officers later determined that Smith had been the driver of the vehicle and that Rhodes had been the passenger. The firearms were distributed throughout the vehicle, with some near the driver's seat where Smith had been seated and others in the right-side passenger area where Rhodes had been seated. Other firearms were found in the back of the vehicle. ECF No. 34, at 2. As part of his Plea Agreement, Rhodes admitted to knowingly possessing the

---

[1] Rhodes denies having any knowledge that the Glock's serial numbers were altered or obliterated and denies that he had altered or obliterated them. ECF No. 66, at 3. That position is not relevant to whether the four-point enhancement under U.S.S.G. § 2K2.1(b)(4)(B)(i) applies. As the Commentary to the guideline explains: "**Defendant's State of Mind.**—Subsection (b)(4)(A) or (B)(i) applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen or had an altered or obliterated serial number." U.S.S.G. § 2K2.1 Comment., App. n. 8(B). (emphasis added). This renders U.S.S.G. § 2K2.1(b)(4)(B)(i) a strict liability enhancement. It therefore applies to Rhodes wholly apart from his knowledge or intent.

3

firearms, including the Glock with the altered and obliterated serial numbers, with the intent to sell them in the City of Richmond, Virginia. Id.

Before January 4, 2024, Rhodes had been convicted of a crime punishable by a term of imprisonment exceeding one year. Specifically, he has a prior conviction for possession of a firearm by a nonviolent felon from 2018. ECF No. 34, at 3. Therefore, Rhodes meets the elements for possession of a firearm by a convicted felon under the Sentencing Guidelines and pursuant to statute. U.S.S.G. § 2K2.1 Comment., App. n. 1; 18 U.S.C. § 922(g)(1). In his Plea Agreement, Rhodes acknowledged that, at the time of his arrest for the present offense, he was in fact a convicted felon and possessed the firearms notwithstanding that fact. ECF No. 34, at 2-3. On June 17, 2024, Rhodes pled guilty to COUNT ONE. ECF No. 33, at 1.

The Probation Officer filed the initial PSR on August 5, 2024. ECF No. 42. The PSR calculated Rhodes' Base Offense Level as a 23 after applying the four-point enhancement. It further assigned Rhodes a Criminal History Category VI based on his extensive history of prior criminal offenses. Id. at 24. With an Offense Level of 23 and Criminal History Category VI, the PSR correctly

4

calculated a sentencing guidelines range of 92-115 months imprisonment. Id.[2]

On August 22, 2024, Rhodes filed the MOTION objecting to the application of the four-point enhancement for possessing a firearm with an altered or obliterated serial number. ECF No. 45. If the four-point enhancement does not apply to Rhodes, the Base Offense Level would be 19, which, when considered alongside his criminal history score, would place him in a new sentencing guidelines range of 63-78 months. U.S.S.G. Ch. 5, Pt. A. The parties submitted additional briefing on whether the enhancement should apply to Rhodes. ECF Nos. 52, 53, 55, 66, 67, & 70. The Court has fully considered the MOTION, the briefs, and the arguments presented by the parties in open court during Rhodes' Sentencing Hearing on Friday, October 18, 2024. At that hearing, the Court denied Rhodes' MOTION and overruled his objection to the PSR. Today, this Memorandum Opinion sets forth the reasoning for that denial.

## II. ANALYSIS

Rhodes objects to using the four-point enhancement for possessing a firearm with an altered or obliterated serial number in calculating his sentence of incarceration. He asks the Court, instead, to impose a sentence without applying that four-point

---

[2] The Probation Office subsequently filed three new versions of the PSR to update it. ECF Nos. 46, 48, & 68. None of these amendments altered the original PSR in ways that are relevant to the Court's disposition of the MOTION.

enhancement, which would reduce his sentencing guidelines range from 92-115 months to 63-78 months. ECF No. 45, at 4. The crux of Rhodes' argument is that applying the enhancement to him would contravene the purpose and intent of the Sentencing Commission in enacting the enhancement. To support his position, Rhodes relies primarily on Amendment 691 to the Sentencing Guidelines. Id. at 2. Amendment 691 passed in 2006 and increased the severity of the enhancement from two (2) to four (4) points to address the "difficulty in tracing firearms with altered or obliterated serial numbers, and the increased market for these types of weapons. U.S.S.G. App. C, amend. 691 (Nov. 1, 2006). From this, Rhodes argues that the enhancement should not apply here because the Glock with two obliterated serial numbers is still easily traceable with its one unaltered, intact serial number. ECF No. 45, at 3.[3] He argues that United States v. Harris, in which the Fourth Circuit held that a serial number is "altered" under the Guidelines when "it is materially changed in a way that makes accurate information less accessible," 720 F.3d 499, 503-04 (4th Cir. 2013), further supports his position because two obliterated serial numbers do

---

[3] Rhodes also cites for support Amendment 819 to the Sentencing Guidelines, which added a four-point enhancement for the possession of a "ghost gun"—a weapon made by private manufacturers without serial numbers. ECF No. 45, at 2. The Commission made clear that Amendment 819 was enacted for the same reasons as Amendment 691: to address the difficulty in tracing firearms without serial numbers. U.S.S.G. App. C, amend. 819 (Nov. 1, 2023).

6

not make the one unaltered serial number "less conspicuous or different nor do[] [they] make accurate information less accessible." ECF No. 45, at 4.

The Government disputes Rhodes' arguments and asks the Court to deny the MOTION. ECF No. 52, at 1. The Government argues that applying the enhancement is consistent with Harris because, although the "intact serial number was not made less accessible," obliterating the other two serial numbers "certainly made 'accurate information less accessible' because one serial number is 'less conspicuous' than three." ECF No. 52, at 2 (quoting ECF No. 45, at 3-4 (quoting Harris, 720 F.3d at 503-04)). The Government makes three additional arguments for why the enhancement should apply in this factual scenario. First, the Government argues that the word "an" in the enhancement is broad enough to encompass a situation where some, but not all, serial numbers on a firearm have been altered or obliterated. Id. Second, the Government presents caselaw from six United States Courts of Appeals that have uniformly held, based on almost identical facts, that the enhancement applies to defendants who possess a firearm with some, but not all, of its serial numbers altered or obliterated. ECF No. 55, at 2-3. Third, the Government argues that the enhancement's purpose, when properly understood, does encompass the factual situation presented in this case. Id. at 3-4.

7

* * *

Although this matter is before the Court on the Defendant's MOTION, the Government has the burden of proof to show that, by a preponderance of the evidence, the enhancement is warranted. See United States v. Evans, 760 Fed. App'x 188, 191 (4th Cir. 2019) (citing United States v. Steffon, 741 F.3d 411, 414 (4th Cir. 2013)). For the following reasons, the Government has met its burden. The MOTION was therefore denied.

Neither party disputes the core facts in this case. Both agree that Rhodes is a convicted felon who possessed firearms in violation of 18 U.S.C. § 922(g)(1). Both also agree that the Glock had three serial numbers, two of which were altered or obliterated while the third remained unaltered and intact. They also agree that, had the firearm only contained one serial number and had that number been altered or obliterated, the enhancement would apply. ECF No. 45, at 2-4 (Defendant); ECF No. 55, at 2 (Government).

This leaves for resolution a purely legal question: whether U.S.S.G. § 2K2.1(b)(4)(B)(i) applies where only some, but not all, of a firearm's multiple serial numbers are altered or obliterated. That question is one of first impression in the Fourth Circuit. As explained below, the text of the Sentencing Guidelines, decisions from other circuits, and the purpose undergirding the enhancement all support the same conclusion: The enhancement does apply when

8

only some of a firearm's serial numbers are altered or obliterated while another serial number on the same firearm remains unaltered and intact.

The plain text of the enhancement reads: "If . . . any firearm had <u>an</u> altered or obliterated serial number . . . increase [the Base Offense Level] by 4 levels." U.S.S.G. § 2K2.1(b)(4)(B)(i) (emphasis added). The guideline does not state that it only applies when <u>all</u> serial numbers have been altered or obliterated. Instead, by using the article "an," the text of the enhancement most plainly reads to apply where even just <u>one</u> of many serial numbers on a firearm has been altered or obliterated. Whether it be one of three or one of one hundred, altering or obliterating <u>one</u> serial number constitutes "<u>an</u> altered or obliterated serial number," <u>id.</u> § 2K2.1(b)(4)(B)(i) (emphasis added), rendering the enhancement applicable.

Rhodes possessed a firearm with three serial numbers on it. Two of those numbers were altered or obliterated as defined by the Fourth Circuit. <u>Harris</u>, 720 F.3d at 501 (holding that mere gouging and scratching of a serial number constitutes "altered" under the enhancement, even if the serial number is not rendered completely "illegible"). The third serial number remained unaltered and intact. Therefore, Rhodes possessed a firearm with <u>an</u> altered or obliterated serial number. By the plain text of the Guidelines, the enhancement applies to Rhodes.

Six United States Courts of Appeals have reached the same outcome under materially similar facts. United States v. Serrano-Mercado, 784 F.3d 838, 850 (1st Cir. 2015) ("The text of the guideline requires only 'an altered or obliterated serial number' . . . . The guideline's text does not require that all of the gun's serial numbers be so affected . . . . [T]he text of this guideline is best construed—consistent with the plain meaning of its words—to trigger the enhancement when the serial number on the frame of a firearm is obliterated even if other serial numbers on the firearm, like the one left intact on the slide of this weapon, are unaltered." (emphasis in original) (internal citation omitted))); United States v. St. Hilaire, 960 F.3d 61, 65 (2d Cir. 2020) ("The Enhancement applies if a single iteration of a gun's serial number has been altered or obliterated notwithstanding that another is perfectly legible." (citing Serrano-Mercado, 784 F.3d at 850)); United States v. Jones, 927 F.3d 895, 897 & n.13 (5th Cir. 2019) ("We join the First, Eighth, and Eleventh Circuits in holding that the applicable guideline 'requires only that one serial number be altered or obliterated, even if others are clearly legible.'" (collecting cases)); United States v. Sands, 948 F.3d 709, 713 (6th Cir. 2020) ("If a weapon has multiple serial numbers, only one of them needs to be altered or obliterated for the enhancement to apply." (citing Serrano-Mercado, 784 F.3d at 850)); United States v. Thigpen, 848 F.3d 841, 846 (8th Cir. 2017) ("Based on

10

the plain language of section 2K2.1(b)(4)(B), it applies 'when the serial number on the frame of a firearm is obliterated even if other serial numbers on the firearm, like the one left intact on the slide [and the barrel] of this weapon, are unaltered.'" (quoting Serrano-Mercado, 784 F.3d at 850) (alteration in original)); United States v. Warren, 820 F.3d 406, 408 (11th Cir. 2016) ("The guidelines require only that the firearm in question 'had an altered or obliterated serial number.' . . . We have said in other contexts that '[i]n common terms, when "a" or "an" is followed by a restrictive clause or modifier, this typically signals that the article is being used as a synonym for either "any" or "one."' . . . Read in that fashion, the § 2K2.1(b)(4)(B) enhancement applies either when any serial number on a gun has been altered or obliterated or when just one serial number has been altered or obliterated. Warren loses under either reading because one of the serial numbers on his gun was altered or obliterated." (internal citations omitted) (emphasis and alterations in original)). The Court today sees no reason to diverge from the well-reasoned consensus established by the First, Second, Fifth, Sixth, Eighth, and Eleventh circuits.

The Government properly cites this precedent in support of its position. ECF No. 55, at 2-3. Rhodes "concedes" that these decisions accurately reflect the state of the law, but maintains his objection based on the purpose and intent of the guidelines.

11

ECF No. 67, at 1-2. However, contrary to Rhodes' position, the purpose and intent behind the enhancement further support the conclusion that the enhancement applies to defendants who possess a firearm with some, but not all, of its serial numbers altered or obliterated.

In 2006, the Sentencing Commission amended the Guidelines to increase the base-offense-level enhancement for possession of a firearm with an altered or obliterated serial number from two (2) to four (4) points. U.S.S.G. App. C, amend. 691 (Nov. 1, 2006). The Sentencing Commission's stated purposes for that increase were to "reflect[] both the difficulty in tracing firearms with altered or obliterated serial numbers, and the increased market for these types of weapons." Id. (emphasis added).

Rhodes focuses primarily on the first purpose—the concern for traceability. At bottom, he argues that, because at least one (of the three) serial numbers on the firearm that he possessed was visible, it is still traceable; therefore, imposing the enhancement does not serve the purpose and misses the intent of the Guidelines. ECF No. 45, at 3-4. He also argues that a forthcoming amendment, which addresses a circuit split on the meaning of "altered," supports his intent-based argument. ECF No. 67, at 2-3.

When passing the forthcoming November 2024 amendment to address a circuit split on the definition of "altered," the

12

Commission noted that courts were in agreement that "a serial number <u>need not be scientifically untraceable</u> for the enhancement to apply." <u>Primer on Firearms Offenses</u>, U.S.S.C. (May 1, 2024), <u>https://www.ussc.gov/sites/default/files/pdf/training/primers/2024_Primer_Firearms.pdf</u> (prepared by the Office of the General Counsel) (pp. 19-20) (emphasis added).[4] That language undercuts, rather than supports, Rhodes' argument on traceability because it demonstrates that the Commission, in amending the guideline, is not solely concerned with the scenario in which <u>all</u> and <u>every</u> serial number on a firearm is altered or obliterated to the point of rendering the weapon untraceable. Instead, the language suggests that even those firearms made <u>less</u> traceable—because, for example, less than all of their serial numbers are visible—may warrant application of the enhancement.

Imposing the enhancement on defendants who possess a firearm with some, but not all, of its serial numbers altered or obliterated does promote the enhancement's traceability purpose. As the First Circuit put it, applying the enhancement in this factual situation facilitates tracking different components of the

---

[4] The Commission also stated that: "Courts also have held that if a firearm has more than one serial number on it, only one of the serial numbers needs to be altered to trigger the enhancement." <u>Primer on Firearms Offenses</u>, at 20 & n.126 (citing <u>St. Hilaire</u>, 960 F.3d at 65 & n.2 (collecting cases)). Unlike the issue of how to define "altered," the Commission did not note that any disagreement exists on applying the enhancement in this factual situation.

13

same firearm that bear a serial number in the case where its parts are severable. Serrano-Mercado, 784 F.3d at 850. Similarly, in St. Hilaire, the Second Circuit explained that applying the enhancement in this way serves the traceability purpose because "interchangeable, matching serial numbers assure reliable identification of the firearm as a whole, and a single altered or obliterated serial number renders it more difficult to trace." 960 F.3d at 64-65. Simply put, enforcing the enhancement in the present situation helps combat the proliferation of harder-to-trace and untraceable firearms.

The Commission stated a second, interrelated, purpose behind the enhancement: reducing the market for weapons with altered or obliterated serial numbers. U.S.S.G. App. C, amend. 691 (Nov. 1, 2006). Imposing the enhancement on defendants in possession of firearms with some, but not all, of their serial numbers altered or obliterated serves this purpose as well. Demonstrating that the four-point enhancement applies not only to weapons with all of their serial numbers altered or obliterated but so too to those with one of multiple serial numbers altered or obliterated discourages individuals from possessing these weapons and selling them to others who may do harm. It forecasts to these would-be criminals that such behavior is unacceptable and will result in more severe punishment. This aligns with the enhancement's

14

deterrent purpose and, in practice, will help reduce the market for these dangerous firearms.

Ultimately, the plain text of U.S.S.G. § 2K2.1(b)(4)(B)(i), precedent from six circuit courts, and the purpose and intent behind the enhancement all weigh in favor of denying Rhodes' objection to the PSR. Consistent with this authority, the Court denied Rhodes' MOTION and held that the four-point enhancement for possession of a firearm with an altered or obliterated serial number, U.S.S.G. § 2K2.1(b)(4)(B)(i), applies when a defendant possesses a firearm with multiple serial numbers and only some, but not all, of those serial numbers have been altered or obliterated.

### III. CONCLUSION

For the reasons set forth above, Rhodes' MOTION, ECF No. 45, was DENIED.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 30, 2024